```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION

REBECCA G. WILLIAMS,           }
                               }
     Plaintiff,                }
                               }      CIVIL ACTION NO.
v.                             }      CV-08-AR-2273-S
                               }
SOUTHERN COMPANY SERVICES,     }
INC., et al.,                  }
                               }
     Defendants.
```

**MEMORANDUM OPINION**

Plaintiff, Rebecca G. Williams ("Williams"), sues defendant, Southern Company Services, Inc., ("SCS"), for alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, ("ADA"), the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*, ("FMLA"), and breach of contract under Alabama state law. Williams also sues defendant, Earl Parsons ("Parsons"), for the state law tort of assault. Before the court is defendants' joint motion for summary judgment. For the reasons that follow, defendants' motion will only be partially granted.

**FACTS**[1]

---

[1] Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In accordance with Rule 56(c), the narrative statement of facts includes facts that are undisputed by the parties. Where there is a dispute, the facts are presented in the light most favorable to the non-moving party. "The movant 'bears the initial responsibility of informing the district court of the basis of its motion' by identifying those portions of the record that demonstrate the absence of

Williams began working for SCS in 1984. (Doc. 62 at 2). At all times material to her claims, she was employed as a Senior Attorney. *Id.* For a number of years, Williams has suffered from a variety of ailments, including Post Traumatic Stress Disorder (PTSD), depression, anxiety, attention deficit disorder, chronic fatigue syndrome, type-two diabetes, and Lyme disease. She has also undergone gastric bypass surgery and had her gall bladder removed. In February, 2006, Parsons became Williams's supervisor. (Doc. 62 at 3). Williams informed Parsons that she had PTSD, Lyme disease, and anemia related to her gastric bypass surgery. (Doc. 63-4 at 8). Due to her illnesses, Williams was sometimes absent from work. In July, 2006, Parsons requested that Williams provide doctor's excuses for some of her absences. (Doc. 62 at 4). In compliance with the request, one of Williams's doctors wrote Parsons and informed him that Williams suffered from Lyme disease, type-two diabetes, mononucleosis, and "menopausal hormonal issues". (Doc. 62 Ex. 6).

Because of her various ailments, most prominently the Lyme disease, Williams's work hours were altered so she would not have to drive at times when there was a lot of traffic on the road.

---

genuine issues of material fact." *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)). Thereafter, the burden shifts to the non-movant to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact or that the moving party is not entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *see also Celotex,* 477 U.S. at 324, 106 S. Ct. at 2553. Conclusory allegations or legal conclusions are not enough. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

(Doc.63-5 at 16). Williams was also allowed to do some of her work from home. *Id.* Despite the different work schedule and health problems, all written performance reports indicated that Williams's work was satisfactory, if not excellent, in the months before her termination. (Doc. 62 at 3,4; Doc. 66 at 3,4).  Also, prior to her termination, relations between Williams and Parsons were amicable. *Id.* In early November, 2006, Williams met with Parsons. (Doc. 62 at 6). During the meeting, Williams told Parsons that her doctor had recommended that she get treatment for her Lyme disease at a facility in Kansas City, a process that would take approximately six to eight weeks. *Id.* Parsons and Williams discussed Williams's options, including SCS's disability policies. *Id.*

On November 21, 2006, Williams was scheduled to attend a meeting in Wilsonville, Alabama, regarding a government project titled "Orlando". (Doc. 62 at 7). Williams testified that she was not feeling well that morning, but began traveling to the meeting anyway. (Doc. 62 at 8-9; Doc. 66 at 11-13).  Williams made it to within ten miles of Wilsonville, but became increasingly nervous about driving home from the meeting as she was experiencing symptoms of her Lyme disease and she had a tire that was low on air. *Id.* Williams called the meeting organizer on her cell phone, and they discussed the idea of sending a van to pick Williams up. *Id.* Ultimately Williams did not attend the meeting and simply drove herself home. *Id.* On November 30, 2006, Williams turned in her time

sheet for the pay period that included November 21, 2006. Williams turned the time sheet in to Becky Neel ("Neel"), the timekeeper for the department. (Doc. 63-3 at 17). Williams explained to Neel that she was billing two hours to the "Orlando" project for her abortive drive to the Wilsonville meeting on the 21st. *Id.* Neel responded, "Okay". *Id.*

On December 4, 2006, Williams was called into a meeting with Parsons and Claudia Arns ("Arns"), a human resources representative for SCS. (Doc. 62 at 15). Parsons informed Williams that she was being terminated for falsifying her time sheet, and explained that it was based on the two hours billed to the "Orlando" project for travel to the Wilsonville meeting. *Id.* Parsons explained to Williams that the decision was final, and read from a termination script. *Id.* At some point during the meeting, Williams blacked out and fell down, after which Parsons and Arns helped her up by the elbows. *Id.* The exact actions and circumstances that preceded Williams's fainting are disputed. *Id.*; Doc. 66 at 66-67.

On June 1, 2007, Williams filed a charge with the EEOC. On September 8, 2008, Williams received her notice of right to sue. Williams filed the instant action on December 10, 2008.

## ANALYSIS

**Gender Discrimination**

Williams has provided no direct evidence of gender discrimination. Therefore, she must proceed under the burden-

shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under this analysis, to establish a *prima facie* case, Williams must demonstrate that, (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class or was treated less favorably than a similarly-situated individual outside the protected class. *Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). Williams cannot establish a *prima facie* case of gender discrimination under Title VII because she was replaced by a female and she has provided no evidence that she was treated less favorably than her male co-workers for the same conduct.

Williams's argument that she was treated differently from her male co-workers centers around allegations that male co-workers "were able to count work done outside of regular hours on their time sheets". (Doc. 66 at 22). Williams further claims that her male co-workers were allowed to bank hours worked on one day and count them on a later day, thus enabling them to leave early or take time off without using vacation hours. *Id.* Williams bases her knowledge of her co-workers' activities on conversations she overheard and a "general discussion of what was being done". (Doc. 63-5 at 21). Williams does not claim to have personal knowledge of

5

how her male co-workers were actually marking their time sheets, and there is no evidence of such beyond her testimony. Williams's claims are completely based on her own hearsay testimony, and cannot form the basis of a *prima facie* case for gender discrimination.

Even if Williams's testimony concerning her male co-workers actions is admissible in evidence, or those actions could be proven by other means, she would fail to establish a *prima facie* case of gender discrimination because the male co-workers are not proper comparators in relation to the adverse employment action taken against Williams. "In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Williams does not allege that any male co-worker billed a government project for time spent attempting to travel to a meeting that was ultimately missed for personal reasons, which was the stated reason for her termination. Williams's argument that she had general knowledge of employees improperly billing time, and that some of that time must have been billed to government projects, is pure conjecture, and is insufficiently related to the specific reason given for her termination. Williams has failed to establish a *prima facie* case of gender discrimination. Defendants' Rule 56

motion will be granted as to that count.

**ADA**

Williams claims both failure to accommodate and retaliation under the ADA. To succeed on either of her ADA claims, Williams must first show that she qualified as "disabled" under the statute. Under the ADA, a disability is defined as "(a) a physical or mental impairment that substantially limits one or more life activities; (b) a record of such impairment; or (c) being regarded as being so impaired." 42 U.S.C. § 12102(1). Williams's list of physical and mental impairments is substantial. She has testified that her Lyme disease gave her hand and eye tremors, making it difficult to drive, and that some of her other ailments caused her to suffer things like chronic fatigue. She has also testified that these symptoms substantially affected major life activities. Some of Williams's claimed illnesses are supported only by her own testimony, but a large number of them, including the Lyme disease, are corroborated by medical evidence. If Williams has not conclusively established that she qualifies as disabled under the ADA, she has, at the very least, created a disputed issue of material fact on the issue.

"An employer's failure to make reasonable accommodation for an otherwise qualified disabled employee constitutes discrimination under the ADA". *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225-26 (11th Cir. 2005). Williams's claim of failure to

accommodate is based on her allegations that because of her disability she was forced to work nights and weekends in order to keep up with her workload, and that she was forced to take vacation and sick time for the daytime hours she missed, even though she would make that time up on nights and weekends. (Doc. 66 at 35-35). Williams thus argues that "[t]he outcome of the Defendants' failure [to accommodate] was that Williams had to work more than non-disabled employees and use her vacation time in order to receive credit for the same number of hours as her co-workers." *Id.* In support of her argument, Williams offers her own testimony detailing SCS's alleged failures. *Id.* In response to Williams's arguments regarding accommodation, SCS argues that it did accommodate Williams, and futher, that "Williams admits she received accommodations for her physical impairments". (Doc. 62 at 25). Although Williams does admit that SCS was accommodating in certain ways, she also testifies that SCS failed to accommodate her in other, often substantial ways. The fact that she testified that SCS accommodated her **in some ways** does not eliminate **all** claims for failure to accommodate. Based upon Williams's testimony, a trier of fact could reasonably conclude that SCS made Williams work more hours than her non-disabled co-workers, a finding that would make SCS liable under the ADA.

    Williams also claims that she was terminated because of her disability, which, if true, would be a clear case of ADA

retaliation. To establish a *prima facie* case of retaliation Williams must show (1) that she engaged in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal link between the protected activity and the adverse action. *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir. 1989). Once a plaintiff has established a *prima facie* case, a defendant can offer a legitimate reason for the employment action. If defendant offers such a reason, the plaintiff may rebut it by showing that the proffered reason was mere pretext.

Williams testifies that she requested certain accommodations for her disabilities. This was a protected activity under the ADA. *See Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1194 (10th Cir. 2007). It is undisputed that Williams suffered an adverse employment action, namely, termination. Therefore, the remaining questions are whether Williams has sufficiently established the required causal connection, whether SCS has offered a legitimate reason for the action, and, if so, whether there is a legitimate dispute of fact as to whether the proffered reason is pretext. In an attempt to meet the "causal connection" requirement, Williams points to the temporal proximity between her request for accommodations and the termination decision. She particularly notes the November discussion between herself and Parsons. During that conversation, which took place less than one month prior to Williams's

termination, she told Parsons that she might be leaving for up two months for Lyme disease treatments, and Parsons allegedly asked her if she was ready for retirement or if she could marry soon. (Doc. 66 at 37-38; Doc. 63-5 at 30). Williams also cites statements made by Parsons and others about her absenteeism. SCS correctly points out that, depending on the circumstances, courts have held that temporal proximity alone will not establish causation. *See Wascura v. City of South Miami*, 257 F.3d 1238, 1245 (11th Cir. 2001). However, in this case, the close temporal proximity of the events, combined with the surrounding statements and circumstances, present a triable issue as to whether there is a causal connection between Williams's requests for accommodation and her termination. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).

SCS has offered a legitimate, non-retaliatory reason for Williams's termination, namely, the time sheet entry for Williams's attempted drive to Wilsonville. SCS calls Williams's time entry "falsification of time charged to the government" and "fraud", and claims that it "is a violation of federal law and a terminable offense." (Doc. 62 at 18). Williams, herself a lawyer, points out that per SCS guidelines, travel time is billable to government contracts. (Doc. 63-1 at 8, 9). She also notes that government and company regulations are silent as to whether such travel has to be successful to be billable. *Id.* Williams contends that time sheets

are routinely changed when an attorney improperly bills, and there are multiple levels of checks before an attorney's bill is submitted to the government, including review by the timekeeper and final approval by management. (Doc. 66 at 8-12; Doc. 63-6 at 51-52). Williams thus claims that her time entry, even if improper, should not have been cause for termination, and that SCS was simply using a relatively minor infraction as an excuse to get rid of her.

Although "fraud" and "intentionally falsifying a timesheet" are certainly terminable offenses, there are disputes of material fact as to whether Williams was guilty of such conduct. SCS points to no other employee who was terminated for actions similar to Williams's.  While SCS attempts to describe Williams's conduct as calling for termination, in reality a mistake or misstatement on a timesheet like the one made by Williams is something that is handled with discipline short of termination.  There is a dispute of material fact as to whether Williams's conduct even violated SCS's timekeeping rules, much less whether it amounted to "fraud" or "intentional falsification".  SCS admits that an attorney can bill for travel time, and SCS's timekeeping policy is silent on whether the travel has to be successful for the attorney to bill for it.  In the aggregate, these factors create a dispute of material fact as to whether SCS's proffered reason for terminating Williams is pretext. Therefore, SCS's Rule 56 motion will be denied as to Williams's claims under the ADA.

**FMLA**

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]". 29 U.S.C. § 2615(a)(1). It is also unlawful for an employer to retaliate against an employee who exercises or attempts to exercise her statutory FMLA rights. *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010). Williams claims that by terminating her SCS interfered with her statutory right to commence FMLA leave. She also alleges that her termination was in retaliation for her exercise of FMLA rights. Ordinarily, FMLA interference claims are analyzed differently from retaliation claims. Unlike retaliation claims, "the employer's motives are irrelevant" for interference claims, and the plaintiff must only show "that he was entitled to the benefit denied." *Id.* at 1235 (quoting *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206-1208 (11th Cir. 2001)). However, the Eleventh Circuit has held that for both interference and retaliation claims an employer does not violate the FMLA by terminating an employee "if the employee would have been dismissed regardless of any request for FMLA leave." *Krutzig*, 602 F.3d at 1236. Because Williams's claims for interference and retaliation are both based solely on her termination, they both turn on SCS's motives, and will be analyzed under the same burden shifting analysis applied to

her ADA and Title VII claims. When there is no direct evidence of an employer's motive, an FMLA plaintiff must make out a *prima facie* case by showing that she engaged in protected conduct, that an adverse employment action was taken, and that there was a causal connection between the two. *Id.* If a plaintiff makes out a *prima facie* case, the defendant can rebut by showing the adverse action would have been taken even if the plaintiff had not engaged in protected conduct. *Id.* The plaintiff must then offer evidence to show that the defendant's proffered reasons are pretext.

SCS argues that Williams did not engage in protected conduct under the FMLA. Williams acknowledges the fact that she did not formerly request FMLA leave, but claims that she engaged in protected activity through her conversation with Parsons in November, 2006. To qualify for FMLA protection, "an employee is not required to assert expressly her right to take leave under the FMLA." *Cruz v. Publix Supermarkets, Inc.*, 428 F.3d 1379, 1386 (11th Cir. 2005)(citing 29 C.F.R. §§ 825.302(c),825.303(b)). "However, the notice must be 'sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave.'" *Id.* (quoting 29 C.F.R. § 825.302(c)). Both Williams and Parsons testified that in November, 2006, Williams told Parsons that she may need to go to Kansas City for six to eight weeks to receive treatment for her Lyme disease. Treatment for Lyme disease is clearly FMLA-qualifying leave, and

Williams told Parsons the timing and duration of the proposed leave. Therefore, Williams engaged in FMLA protected activity and has thus satisfied the first requirement of her *prima facie* case. Williams's termination is clearly an adverse employment decision. The only remaining issue is causation. In her attempt to prove causation, Williams relies on the same evidence that she submitted in support of her ADA retaliation claim, namely, temporal proximity and Parsons's alleged statements. SCS's nondiscriminatory reason and Williams's attempt to show pretext also mimic the arguments for and against Williams's ADA claims.

Just as the parties have tracked their ADA arguments, this court will apply the same reasoning to Williams's FMLA claims as it did to her ADA claims, and will not dismiss them under Rule 56. Williams's potential FMLA leave was completely intertwined with her disability, as the leave would have been for treatment of her Lyme disease. It would defy logic to conclude that there is a dispute of material fact as to whether SCS terminated Williams because of her disability, and to simultaneously conclude that as a matter of law the leave requested to treat said disability played no part in SCS's decision. Therefore, Williams's FMLA claims, like her ADA claims, will survive SCS's Rule 56 motion.

**Breach of Contract**

Williams's breach of contract claims are based on allegations that she did not timely receive her disability, insurance, and

pension benefits, and also that SCS failed to reimburse her for expenditures she made while conducting company business. (Doc. 1 at 26). In support of its Rule 56 motion, SCS argues that Williams's breach of contract claims regarding disability, insurance, and pension benefits are preempted by ERISA. In her response to SCS's motion, Williams concedes that those purported "breach of contract" claims should have been made under ERISA, and seeks leave to amend her complaint to state a claim under ERISA. Allowing Williams to amend her complaint and add a new claim after discovery has been completed and a Rule 56 motion filed would cause SCS obvious prejudice.  Furthermore, even if Williams were allowed to amend, or if she had stated a claim under ERISA in the original complaint, such a claim would not have survived a Rule 12(b)(6) motion, much less a motion under Rule 56. Williams has not identified which terms of the benefit plans she believes SCS has breached, nor has she alleged that she has exhausted her administrative remedies under the plans. She cannot maintain an ERISA claim in this court.

 Williams's claim based on an alleged lack of reimbursement for business expenses is similarly deficient. Williams claims that at the time of her termination, she had amassed approximately $3000 dollars in business related expenses that SCS has not reimbursed her for. She claims that she called SCS about reimbursement, and that she was told she needed to provide documentation of her expenses, and that she would have to bring in such documentation

15

personally. Williams did not want to go back to the SCS office. In fact, she testified that "I'm not going back in that office. So, that's why I didn't get my expenses paid." (Doc. 63-5 at 54). Williams does not point to any section of an employment contract providing that terminated employees shall have the right to submit expense documentation through email. There are no outstanding requests for reimbursement that SCS has refused to pay. Williams has failed to provide any evidence that SCS breached a contractual obligation, and therefore her breach of contract claims will be dismissed on Rule 56 motion.

**Assault**

Williams's only claim asserted against Parsons is for assault based on Parsons's alleged actions at the meeting during which Parsons told Williams that she was terminated. Under Alabama law, assault is "an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented. *Wright v. Wright*, 654 So. 2d 542, 543 (Ala. 1995). Williams alleges that at the December 4, 2006 meeting Parsons told Williams that she was being terminated, then, after some discussion, Parsons became angry, took some "long, stomping steps" towards her and told her to get out of his office. (Doc. 63-5 at 44). Williams testified that she stood

up, and Parsons continued stomping around the room and again came charging toward her, at which point she fainted. *Id.* When she regained consciousness Parsons was helping her to her feet by her elbow. *Id.* Williams does not specifically recall how close Parsons got to her, but testified that "the fear – the fear of being physically hurt was in my mind because he was so angry and coming toward me." *Id.* at 45.

Parsons argues that even if Williams's testimony is taken as true, it does not provide sufficient evidence that he made an "unlawful offer to touch" Williams. He further argues that his alleged conduct could not, as a matter of law, create a "well-founded fear of imminent battery". An assailant does not have to announce his intention to touch a victim for there to be an actionable assault. Taken in the light most favorable to the plaintiff, Williams's testimony that Parsons came angrily stomping toward her and yelling at her to get out of his office might convince a reasonable juror that Parsons made an unlawful offer to touch Williams. Williams has testified that she had a fear of imminent battery. Whether or not that fear was "well-founded" is a question of fact that cannot be resolved under Rule 56. Therefore, Williams's assault claim against Parsons will survive defendants' motion for summary judgment.

## CONCLUSION

Williams has failed to establish a *prima facie* case of Title

VII gender discrimination. She has also failed to properly support her claims for breach of contract.  Therefore defendants' Rule 56 motion will be granted as to those claims, and her complaint, insofar as it contains those claims, will be dismissed with prejudice by separate order. There are disputes of material fact concerning Williams's claims under the ADA, the FMLA, and her state law claim of assault asserted against Parsons. Therefore her action, insofar as it contains these claims, will survive defendants' rule 56 motion.

    DONE this 21st day of July, 2010.

                                                                     WILLIAM M. ACKER, JR.
                                                                     UNITED STATES DISTRICT JUDGE